Good morning, ladies and gentlemen. I understand for traffic reasons we are going to skip over Case No. 1 until we can slot it back in. So we will move immediately to Case No. 2 for this morning, Stephen Rogers v. United States, 141993. Mr. Dvorak. Your Honor, my name is Richard Dvorak and I represent the appellant in this case, Stephen Rogers. This is a Section 2255 petition coming on a federal conviction for violating Section 2251A. Essentially, this case comes down to two arguments, but the first argument is not the credibility argument. The first argument comes down to whether or not the government proved, beyond a reasonable doubt, what I like to call the added element, I guess, of production versus just sending or receiving sexually explicit materials of a minor. And I think that's important because, you know, the difference between the two is not anything small. He would have faced a mandatory minimum of 15 years under the receiving or sending versus the production is 25 years, mandatory minimum. So this is no small matter. But, Mr. Dvorak, didn't we effectively decide the prejudice question when we addressed the sufficiency of the evidence in Mr. Rogers' direct appeal? Well, no, Your Honor, because in that case, well, first of all, reasonable doubt was not raised on direct appeal. And, in fact, the only issue on direct appeal that dealt with reasonable doubt was a comment by this court, not addressing any legal argument, just saying that Andrea, we're calling her Andrea, had changed her testimony, didn't say changed her testimony, but had given varying testimony. Right, that there was inconsistent testimony. Exactly. But I want to direct your attention to what we have all sorts of different ways of numbering the pages, but it's page 389, it looks to me, in Andrea's own testimony. And it's the exchange. And the question is, now you mentioned that Hot Hockey asked you to take pictures of the body parts in question. Is that right? Answer, yes. Did you want to take those pictures? Answer, no. I don't see why a rational jury, and then further on, why was it that you agreed to take those pictures, take those pictures? A reasonable jury could understand from her responses that it indeed has to do with taking the pictures, not just finding other pictures on her computer that somebody else had taken, that in some other way had not satisfied the statutory definition. Your Honor, and I think that's important to put that in context, and that's why I put it in context in my brief, and this was addressed in the lower court as well, because what Your Honor is reading from is the redirect. This is direct, actually. Well, I'm sorry, it's direct, but after she had already testified as to what occurred, and then the government went back to the testimony. You're right, we're still on direct. I understand that, but we're talking about, first of all, an evidentiary standard that even on a direct appeal would be quite deferential to the jury's findings. Is there anything in the record that would support a jury finding that there was actual production of these offensive pictures? And I'm just saying, looking at this exchange, it's not the only one, but it's the one I happened to quickly find first, I don't see why a reasonable jury couldn't have found that. And now, of course, we're on 2255, where the standard is even harder. Well, Your Honor, with regard to that, again, I think it is important to put that in context, because all of her prior testimony up to that point was just saying over and over, he asked me to send pictures, send pictures. But look, it seems to me that if one accepts Andrea's testimony of face value, the testimony supports, I mean, the entire testimony, the testimony supports the notion that he enticed her to take these photographs. She said that he asked her and even nagged her. Right in there, he says, and so it's a pure, it becomes a pure question of witness credibility, and we are extremely deferential on credibility questions. I do realize that, Your Honor, and that's going to be my next issue. But, again, we're not focusing on the sufficiency with regard to the enticing or persuading issue. The issue is a production issue. And, again, I don't believe that it would be sufficient evidence to basically have the witness say over and over and over, send, send, send, send, and then for the government to say with the next question, now, you mentioned take. Well, that's not at all what she mentioned. She mentioned send. But then there's a whole page in some where I was reading where they're doing nothing but discussing taking the pictures, and she actually says, well, question, why was it you agreed to take these pictures, answer, so Hot Hockey would stop asking me, question, stop asking you, question mark, answer, to take the pictures. So, you know, do you have to understand it that way? I don't know, but it's hard for me to say a jury was irrational or not solidly based by understanding that she took the pictures. Okay, but the, I agree, Your Honor, I agree that is the standard. But at the same time, the other standard that goes along with that is proof beyond a reasonable doubt. How can you send some, how could she send it without taking? Because she could have photographs in her own computer that she had previously taken. Well, but she still would have taken them. But he wouldn't have induced her to do that. That's pretty tenuous. Well, a technical matter that results in 10 years of imprisonment. I understand there's a technical matter, but they matter very much to Mr. Rogers. So I'm giving you the benefit of the doubt that he has to have enticed her to take them, but the sequence that I'm looking at seems to me to lend, actually, most readily lend itself to that conclusion. I'll just address that one last time, and then I'll move on to the credibility. Okay. Are you suggesting that the government improperly led the witness in this instance, suggesting that Hot Hockey had asked her to take the pictures? Yes, Your Honor. There's no objection to the question. There was no objection to the question. And this is a young witness, right? She's still pretty youthful at this point. And, frankly, I would say that's even more reason to object to leading, because you shouldn't be putting words in her mouth. But your argument is not in effectiveness for failure to object. It's for failure to raise sufficiency, right? Exactly, yes. At the time, forgive me, was she 14 or 15 at the time that she's testifying? I believe it was 14. She's 14 by then? Yeah, I believe so. Oh, by the time of the testimony? Yeah. I thought she was 20-something. No, by the time of the testimony, she was older. I don't remember the age when she testified. Well, if you'd like to say a quick word about credibility, you're already into your rebuttal time. Yes, Your Honor. I realize that credibility is a deferential standard. But in this case, not only do we have the Seventh Circuit mentioning in its own opinion that she had been inconsistent in her testimony, but it's rather amazing that of all of these conversations that are written and documented, not once does it have him asking her any questions about enticing, persuading, ask me to take pictures, send pics, et cetera. Second of all, the first time that she is asked, what caused you to take these pictures? She had no idea. She had been online, lining with numerous individuals. How was she supposed to remember someone she has never met? And it is nowhere in the emails that he asks her to do these things. When there's all these other people who are communicating with her, and her first response to the FBI was, no, I don't know what caused me to do this. So I think the credibility issue, well, it is deferential. If you also combine that with the first issue, I think does raise reasonable doubt. All right. Thank you. Thank you very much. I'll let you stay with it for rebuttal. Mr. DeLear. May it please the Court, my name is Steve DeLear, and I represent the United States of America in this matter. Just to clarify one point raised, as far as the witness's age, at the time of the trial, she was an adult. It was 18 or 19 off the top of my head, I don't recall. At the time of the incident, she was 14. And Judge Robner, you had asked at one point regarding direct appeal what this Court's take on it was, and a quote from that decision on direct appeal, this Court found that a reasonable jury could convict based on Andrea's testimony on count four. And as the Court has already pointed out, the direct examination of Andrea makes clear, one, that she was credible, but most importantly that she was asked to take these pictures by the defendant, Stephen Rogers. Now, there were some conflicts between her testimony and that of the government investigator, were there not? Yes, Your Honor.  And then the agent testified at trial, and there were certain things that she had testified to that were inconsistent with the agent's report of that interview. But during the direct examination at trial, she consistently said that this individual, Hot Hockey, she knew him by screen names, had asked for these pictures, had told her what pictures he wanted, and at his instruction she took those pictures. And as you've also noted, there were emails. There were 16 emails that corroborate that witness, and they show, one, that these were sexually charged conversations, but also she testified that she did this unwillingly. She didn't want to do it, but he kept nagging her for the pictures. Now, if I'm remembering correctly, there were also a lot of chats that did not get saved, instant AIM or other kinds of chats? You are correct. And that's really where I think some of the inconsistencies came in. She was cross-examined about the absence of a request in the email. There were 16 emails admitted at trial. As you point out, Judge, there were none of the text messages were preserved. It was just a pass-through, and they were gone. They weren't kept by either Andrea or the defendant. And so she testified to those. And as in her direct examination, those AIM messages or instant messaging between her and the defendant were happening on a regular basis. She talked about three times a week, an hour a day, or an hour each time for a two-month period. So there was a lot more going on via IAMing than there was via email. And that was when she was cross-examination. Her point was she agreed with the cross-examiner that there wasn't a request in the emails, but she had consistently testified it came through in the instant messaging. And for those reasons, given the ample evidence that Stephen Rogers was guilty on count four, it wasn't an effective assistance to counsel for appellate counsel to go to stronger arguments when the evidence of the victim witness was corroborated by the emails. And also, as the Court has pointed out, the very high obstacle that appellate counsel would face because ultimately to overturn this conviction, you would have to reevaluate a credibility determination of Andrea, which the Court is reluctant to do and only does it when it's impossible that the witness could have observed what they testified to, and that's not the case here. Now, of course, in looking at count four, that's what drives this extremely long sentence. So I certainly would have imagined appellate counsel might have done well to focus on that as opposed to just knocking out some subsidiary concurrent sentence. And, Your Honor, I think it was raised as a strategic matter. I think it was embedded in the severance argument. In other words, there's a great deal made about the, in their terms, the weakness of the government's case as to count four when talking about severance, that it was error in the defendant's view not to sever counts one and two from three and four. And through that argument, appellate counsel on direct appeal, counsel focused on the fact that the weakness of three and four, counts three and four, warranted the severance motion because it was carryover, spillover from the evidence on counts one and two. Well, one and two are the fictional person, right? Correct. Undercover Emily Wilson. Undercover, yeah. Yes. And in addressing that argument, the court took head on the sufficiency of the government's case  which really at its heart was Andrea's testimony and found that a reasonable juror could convict the defendant based on Andrea's testimony. If the court doesn't have any more questions for me, I would ask that you affirm the lower court's decision to deny the motion under section 2255. Apparently not, so thank you very much. And you do have something further, I believe, Mr. Dvorak. Your Honor, with regard to the emails, I believe the government said that they corroborate the testimony of Andrea. But on the key issue in the case, the one that is the difference between 15 and 25 years was their production. The reason we're here, there was no corroboration. And the fact that there was no record of this made it all easier for Andrea to say whatever she wanted. But when she was given an opportunity by the FBI agent, the one recorded conversation we have, what caused you to do this? She said, I don't know, I don't remember. And the government mentioned it in their brief, so I'll mention it, and the lower court mentioned it as well. They thought, well, maybe she was embarrassed to talk about sexually explicit details in front of her mother and the FBI. But she did talk about sexually explicit details, so there'd be no reason for her not to answer the simple question, what caused you to do this, who caused you to do this? And also one last thing is, raising reasonable doubt in a severance issue isn't raising reasonable doubt. The government has never argued that we're foreclosed collaterally from arguing this. The quality of the evidence was raised as part of the severance issue, but the issue of reasonable doubt is right for this court to review. I would ask that your honors do review it and that you reverse Mr. Rogers' conviction on count four. Thank you. All right, thank you very much. Thanks to both counsel. We'll take the case under advisement.